UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CONNER CREEK CENTER LLC,

Debtor.
_____/

Case No. 23-48356

Chapter 7

Judge Thomas J. Tucker

STUART A. GOLD, TRUSTEE,

Plaintiff,

vs.

BENJAMIN O. DAVIS VETERANS VILLAGE
LIMITED DIVIDEND HOUSING
ASSOCIATION LIMITED PARTNERSHIP, *et al.*,

Defendants.
_____/

Adv. No. 25-4076

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST RAD CONVERSION SPECIALISTS, LLC ("RAD")
(DOCKET # 18), AND GRANTING SUMMARY JUDGMENT FOR RAD ON COUNT II
OF THE TRUSTEE'S COMPLAINT**

**I. Introduction and background**

This adversary proceeding is before the Court on the Plaintiff Trustee's motion for partial summary judgment against Defendant RAD Conversion Specialists, LLC ("RAD") (Docket # 18, the "Motion"). RAD filed a response objecting to the Motion, and the Plaintiff filed a reply brief in support of the Motion. The Court held a hearing on September 10, 2025, and then took the Motion under advisement.

In the Motion, the Plaintiff Trustee (the "Trustee") seeks summary judgment against RAD on Count II of the Trustee's five-count Complaint (Docket # 1). In Count II, the Trustee

seeks avoidance and recovery of a transfer of $209,646.56, made by means of a wire transfer to RAD on September 22, 2023 (the "Transfer"), a few minutes after the Debtor, Conner Creek Center LLC (the "Debtor"), filed its voluntary Chapter 11 bankruptcy petition.[1]

The Transfer was payment of part of the proceeds of the sale of certain real estate owned by the Debtor. The Debtor owned roughly 16 acres of real estate, located at 4777 East Outer Drive, Detroit, Michigan. Pre-petition, the Debtor made an agreement to sell a certain part of this real estate, consisting of 2.69 acres, to the Defendant Benjamin O. Davis Veterans Village Limited Partnership ("BOD"). In this Opinion and Order, the Court will refer to this 2.69 acre parcel as "Parcel B." The Debtor had agreed to sell Parcel B to BOD, free and clear of all liens, for $700,000.00, in an agreement entitled "Purchase Option Agreement" dated April 1, 2023 (the "Purchase Agreement").[2]

The closing of the Debtor's sale of Parcel B began shortly before the Debtor filed its bankruptcy petition. The Trustee alleges that the $209,646.56 Transfer to RAD, which was made a few minutes after the Debtor filed its bankruptcy petition, was an unauthorized post-petition transfer of property of the bankruptcy estate, avoidable under 11 U.S.C. § 549(a).[3] And the

---

[1] The Chapter 11 case was converted to Chapter 7 on October 25, 2023.

[2] A copy of this agreement is filed as Exhibit C to the Trustee's Motion (Docket # 18-4).

[3] Section 549(a) states, in pertinent part, with exceptions not applicable here:

> (a) . . . the trustee may avoid a transfer of property of the estate—
>
> (1) that occurs after the commencement of the case; and
>
> (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
> (B) that is not authorized under this title or by the court.

Trustee seeks recovery of the Transfer amount from RAD, under 11 U.S.C. § 550(a)(1).[4]

The Court has considered all of the written and oral arguments of the parties, all of the briefs and exhibits filed by the parties, and all of the authorities cited by the parties. For the following reasons, the Court must deny the Motion, and instead will grant summary judgment for RAD on Count II of the Trustee's Complaint.

**II. Summary judgment standards**

In considering whether summary judgment should be granted for the Trustee, the Court has applied the standards governing motions for summary judgment under Fed. R. Civ. P. 56,[5] which the Court now adopts and incorporates by reference from its prior opinion in the case of *Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018).

**III. Discussion**

Except as noted, all the facts stated in this Opinion and Order are established beyond any genuine dispute. From these undisputed facts, the Court makes the conclusions stated below.

When the $209,646.56 Transfer was made, the funds at issue, the right to receive such

---

11 U.S.C. § 549(a).

[4] Section 550(a)(1) states, in pertinent part, with exceptions not applicable here:

> (a) . . . to the extent that a transfer is avoided under section . . . 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

11 U.S.C. § 550(a)(1).

[5] Civil Rule 56 applies in this adversary proceeding, under Fed. R. Bankr. P. 7056.

3

funds, and the right to receive all the proceeds from the sale of Parcel B, were not property of the bankruptcy estate. That is because pre-petition, the Debtor had transferred ownership of all of those rights to RAD and Premier Property Management, LLC ("Premier"). This pre-petition transfer was made by means of a document dated September 15, 2023, entitled "Loan Agreement," that was signed by the Debtor (the "September 15, 2023 Loan Agreement").[6] Paragraph 4 of that document (the "September 15, 2023 Assignment"), states:

> 4. **Borrower hereby irrevocably assigns to Lender all of its right, title and interest in and to the proceeds due to Borrower as Seller at the time of the transfer of title of the Property to the Buyer, to the extent necessary to repay the Loans in full.** If such sum is not sufficient to repay all the Loans in full, they shall be partially repaid proportionately. Borrower will so direct the escrow agent and execute a closing statement to that effect, and if Borrower fails to do so, Borrower hereby empowers and grants to Lender power of attorney coupled with an interest to so direct the escrow agent and execute the closing statement to that effect on behalf of the Borrower as Seller.

(emphasis added).

In the first sentence of paragraph 4, just quoted, the name "Borrower" means the Debtor; the name "Lender" means RAD and Premier, jointly; the name "Buyer" means BOD; and the phrase "transfer of title of the Property to the Buyer" means the Debtor's sale of Parcel B to BOD. All of the capitalized terms just referred to are expressly defined on the first page of the document, except the word "Property." Although that capitalized word is not expressly defined, the word "Property" in this paragraph 4 reasonably can have only one meaning — namely, Parcel B, which was to be sold by the Debtor to BOD. In this paragraph 4, there is no other meaning

---

[6] A copy of this document appears in each side's summary judgment exhibits. It is in the Trustee's Exhibit F (Docket # 18-7 at pdf p. 5 of 25) and it is in RAD's Exhibit A, as part of Exhibit 21 to the Deposition of Robert Beale (Docket # 23-4 at pdf p. 5).

that "Property" possibly can have. There was no other sale of property by the Debtor, to BOD or anyone else, that was contemplated by anyone or referred to in the September 15, 2023 Loan Agreement.

Restating paragraph 4 with these defined terms in brackets, then, it states:

> 4. **[The Debtor] hereby irrevocably assigns to [RAD and Premier, jointly] all of its right, title and interest in and to the proceeds due to [the Debtor] as Seller at the time of the transfer of title of [Parcel B] to [BOD], to the extent necessary to repay the Loans in full.** If such sum is not sufficient to repay all the Loans in full, they shall be partially repaid proportionately. [The Debtor] will so direct the escrow agent and execute a closing statement to that effect, and if [the Debtor] fails to do so, [the Debtor] hereby empowers and grants to [RAD and Premier, jointly] power of attorney coupled with an interest to so direct the escrow agent and execute the closing statement to that effect on behalf of the [Debtor] as Seller.

(emphasis added).

As stated in the first sentence of paragraph 4, the Debtor's assignment to RAD and Premier of the Debtor's right to proceeds of its sale of Parcel B, was "to the extent necessary to repay the Loans in full." The term "Loans" is defined in the September 15, 2023 Loan Agreement to mean, collectively, three specific loans that RAD and Premier had made to the Debtor, in principal amounts totaling $680,928.57, plus interest.[7] These loans were made to enable the Debtor to obtain releases of liens encumbering Parcel B, so the Debtor could close its sale of Parcel B to BOD. The liens included two mortgage liens, plus liens for delinquent water and sewer bills owing to the Detroit Water and Sewer Department.[8] By the time of the

---

[7] *See* September 15, 2023 Loan Agreement at p. 1 (fifth "Whereas" clause, defining "Loans"); p. 2 ¶ 2 (stating the amount and the terms of the "Loans" including the interest rates).

[8] *See id.* at pp. 1-2 (third, fourth, and fifth "Whereas" clauses).

September 15, 2023 Assignment, which was seven days before the sale closing occurred, it was clear and obvious to everyone, including the Debtor, RAD, Premier, and BOD, that the amounts owing on the "Loans," including interest, exceeded the $700,000.00 purchase price the Debtor was to be paid for selling Parcel B to BOD under the Purchase Agreement.[9] So the September 15, 2023 Assignment actually was a complete assignment by the Debtor of its entire right to receive any proceeds from its sale of Parcel B to BOD.

The September 15, 2023 Assignment was a valid, effective assignment under Michigan law, by the Debtor to RAD and Premier, of all of the Debtor's contractual right to receive from BOD any of the $700,000.00 purchase price for the Debtor's sale of Parcel B, under the Purchase Agreement with BOD. As a result, beginning well before the Debtor filed its bankruptcy petition on September 22, 2023, the Debtor no longer owned any right to receive sale proceeds from its sale of Parcel B. It follows that while the $209,646.56 Transfer was a post-petition transfer, it

---

[9] This was obvious to everyone more than a month before September 15, 2023. For example, in a related agreement dated August 14, 2023, signed by the Debtor and RAD, among others, the parties recited as follows:

> [I]n order to enable [the Debtor] to secure clear title to [Parcel B] in order for [Parcel B] to be conveyed to [BOD] that the Development may happen, RAD and the anticipated property manager of the Development, Premier Property Management, LLC, a Michigan limited liability company, of 120 N. Leroy, Fenton Ml 48430 ("Premier"), have, between them, paid for the following items encumbering the land or owed by [the Debtor]: (a) a loan continuation fee; (b) defaulted, delinquent and due real property taxes, and charges for water, sewer and storm water runoff; and (c) payments to the two current mortgagees of [the Debtor], totaling an amount far beyond the Purchase Price of Seven Hundred Thousand Dollars ($700,000) to be paid to [the Debtor] as Seller[.]

("Settlement Agreement Regarding Benjamin O. Davis Veterans Village" (Beale Dep. Ex. 11 (Docket # 23-3) at pdf p. 35)). Robert Beale testified that this agreement was signed (*see* Beale Dep. (Docket # 23-2) at pdf p. 48), and the Trustee has offered no evidence to the contrary.

was not in any part a transfer of property of the bankruptcy estate. The Transfer therefore is not avoidable under 11 U.S.C. § 549(a)(1), and Count II of the Trustee's Complaint fails.

The parties agree, and the Court concludes, that Michigan law applies.[10] And under Michigan law, "an assignment is valid 'if it clearly reflects the intent of the assignor to presently transfer "the thing" to the assignee.'" *Est. of Grimmett v. Encompass Indem. Co.*, No. 14-14646, 2017 WL 5592897, at *4 (E.D. Mich. Nov. 21, 2017) (quoting *Burkhardt v. Bailey*, 680 N.W.2d 453, 463 (Mich. Ct. App. 2004)). "'No "particular form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation."'" *Burkhardt*, 680 N.W.2d at 463 (citations omitted). The assignor must intend "'to vest in the assignee a present right in the thing assigned.'" *Id.* (citation omitted). The Michigan statute of frauds, Mich. Comp. Laws § 566.132, only requires, at most, that the assignor sign the written assignment. *See Est. of Grimmett,* 2017 WL 5592897, at *5. A valid assignment does not require a notarization, and does not require the assignee to sign or otherwise "accept" the assignment. *See id.* And "it is axiomatic that assignments do not need consideration to be valid." *Id.* at *6 (citation omitted).

The September 15, 2023 Assignment meets all the requirements of Michigan law to be a valid, effective assignment. It was signed by the Debtor, and its language makes clear that the Debtor intended to make a present assignment to RAD and Premier of all of the Debtor's contractual right to receive the proceeds of selling Parcel B to BOD under the Purchase

---

[10] All aspects of the real estate transaction involved here, as well as the real estate itself, were located in Michigan, and paragraph 10 of the September 15, 2023 Agreement specifically says that "the laws of the State of Michigan" govern. (*See* September 15, 2023 Loan Agreement (Docket ## 18-7; 23-4) at ¶ 10).

Agreement.  As the document stated, the assignment was irrevocable, and the Debtor retained no control over the contractual right to sale proceeds.

The Trustee argues that the September 15, 2023 Assignment was merely a promise by the Debtor to pay the sale proceeds to RAD and Premier in the future, if and when the Debtor received the proceeds at a closing of the sale of Parcel B.  As such, the Trustee argues, the assignment was not an assignment of "a present right" to the sale proceeds.  The Trustee relies primarily on the case of *Weston v. Dowty*, 414 N.W.2d 165 (Mich. Ct. App. 1987).  The court in that case noted the distinction between a party's mere promise to pay money in the future when the party receives money (not an assignment), on the one hand; and the assignment of a present interest in the right to payment (an assignment), on the other hand:

> "[A] promise to pay money when the promisor receives it from a specified source is not an assignment.  There is no present transfer. So also a promise to assign or to pay out of a specified existing fund in the hands of the promisor does not result in an assignment."  (Footnotes omitted.)

*Weston*, 414 N.W.2d at 167 (quoting Calamari & Perillo, Contracts (2d ed.), § 18-3, pp. 633-34).

But it is clear from its language that the September 15, 2023 Assignment was not a mere "promise [by the Debtor] to pay money when [the Debtor] receives it."  Nor was it a mere "promise to assign" in the future.  Rather, as clearly stated in the first sentence of ¶ 4, it was an irrevocable assignment by the Debtor to RAD and Premier of "all of [the Debtor's] right, title and interest in and to" the Debtor's contractual right to receive sale proceeds under the Purchase Agreement with BOD.  And this was further shown by the fact that in the next sentence in ¶ 4, the Debtor gave up any possible power or ability to receive the sale proceeds at the closing, by granting to RAD and Premier a "power of attorney coupled with an interest," to direct the closing

8

escrow agent to execute a closing statement on behalf of the Debtor to direct that the sale proceeds be paid to RAD and Premier.

In part, the Trustee's arguments demand a precision in the assignment language that Michigan law does not require. As noted above, under Michigan law, "'[n]o "particular form of words is required for an assignment,"' as long as the assignor ""manifest[s] an intent to transfer" and [does] not retain any control or any power of revocation."" *See Burkhardt*, 680 N.W.2d at 463 (citations omitted).

In a reply brief filed after the hearing, on September 15, 2025 (the "Second Reply Brief"),[11] the Trustee argues for the first time that the September 15, 2023 Assignment created, at most, only a security interest in favor of RAD and Premier, giving them only a lien in the Debtor's contractual right to sale proceeds. As such, the Trustee argues, the assignment did not transfer ownership of the Debtor's contractual right to sale proceeds.[12] The Court must reject this argument, because it is contrary to the clear language of the September 15, 2023 Assignment, under the undisputed circumstances existing at the time of the assignment, described in this Opinion above.

The Trustee cites no authority under Michigan law in support of his argument that the assignment was merely a security interest. Rather, the Trustee relies only on the case of *United*

---

[11] (Docket # 40). That Second Reply Brief was filed in support of the Trustee's second summary judgment motion (Docket # 31), which is not yet before the Court. That second motion seeks summary judgment on Counts I and III of the Trustee's Complaint, against BOD. The present Motion, by contrast, seeks only summary judgment on Count II of the Trustee's Complaint, and only against RAD. In deciding the Trustee's present Motion, the Court has considered all of the briefs filed regarding the Trustee's second summary judgment motion, including the arguments of the parties relating to the September 15, 2023 Assignment.

[12] *See* Second Reply Brief (Docket # 40) at 3-5.

9

*States v. Poling*, 73 F. Supp. 2d 882 (S.D. Ohio 1999), which applied the laws of New York and Ohio, which the *Poling* court found to be substantially identical to each other. *See* 73 F. Supp. 2d at 888-90. While *Poling* listed a number of factors to consider in determining the issue, *id.* at 893-94, the Trustee cites no Michigan case adopting these factors. The Court does not find these factors to be particularly relevant or persuasive. And in any event, most of these *Poling* factors are not present in this case.[13] Instead, the Court finds the following passage from the *Poling* case more persuasive:

> The Bank relies upon the Ninth Circuit's analysis of New York law in *Broadcast Music, Inc. v. Hirsch*, 104 F.3d 1163 (9th Cir.1997) to argue that New York law requires no particular form for an assignment and that "an assignment occurs only **when the assignor retains no control over the funds, no authority to collect and no power to revoke**." 104 F.3d at 1167. Relying upon *State ex rel. Leach v. Price*, 168 Ohio St. 499, 156 N.E.2d 316, 320 (1959), the Bank contends that Ohio law, like New York law, requires no particular form for an assignment and that Ohio law also defines an assignment as **a transfer of property from one**

---

[13] The factors listed by *Poling* as tending to show a security interest instead of an absolute assignment include the following:

> (1) the assignment is delivered simultaneously with the loan; (2) the payments received are used to reduce the outstanding balance; (3) any payments received pursuant to the assignment and exceeding the loan are returned to the assignor; (4) the assignee retains a right to a deficiency on the debt if the assignment does not provide sufficient funds to satisfy the amount of debt; (5) the assignee acknowledges that his rights in the assigned property would be extinguished if the debt owed were to be paid through some other source; and (6) the bank treats the assignment as a method of payment of the loan.

*Id.* at 894 (citations omitted). The Court concludes that in this case, these factors do not point to a security interest instead of a transfer of ownership. In the present case, factor no. 1 is missing, since at least two of the three loans at issue were made by RAD and Premier well before the Debtor gave the September 15, 2023 Assignment. (*See* Trustee's Second Reply (Docket # 40) at 4)). And the assignment in this case contains no language of the type described in any of factor nos. 3, 4, or 5. Only factor nos. 2 and 6, which are basically the same, are present.

10

> **person to another which, unless qualified in some way, transfers a person's entire interest in the assigned property with no retained control, authority or power over the assigned property**. *See* 156 N.E.2d at 316.

*Id.* at 889 (emphasis added). Using the words from the *Hirsch* case quoted in *Poling*, in the present case, there was a transfer of ownership, rather than a security interest, because "the assignor retain[ed] no control over the funds, no authority to collect and no power to revoke." Similarly, using the words from the *Leach* case quoted in *Poling*, in this case there was a transfer of ownership because there was "a transfer of property from one person to another which, [was not] qualified in some way, [and which] transfer[red the Debtor's] entire interest in the assigned property with no retained control, authority or power over the assigned property." *See id.*

Cases decided under Michigan law focus on the language of the assignment document itself. *See Prime Fin. Servs. v. Vinton*, 761 N.W.2d 694, 706 (Mich. Ct. App. 2008):

> The intent of the parties to an agreement concerning an interest in property determines whether the agreement transfers ownership of the property or whether the parties merely intended the property to secure performance of an obligation. MCL 440.9102(1)(a); *Yamaha Motor Corp., USA v. Tri–City Motors and Sports, Inc.*, 171 Mich.App. 260, 276, 429 N.W.2d 871 (1988); *Shurlow [v. Bonthuis*, 456 Mich. 730], at 735, 576 N.W.2d 159 [1998] ("[T]he determinative factor is not the form of the transaction as much as it is the intent of the parties in entering into the transaction."). The parties' intent can best be discerned by examining the language actually used in the governing agreement. *Rory v. Continental Ins. Co.*, 473 Mich. 457, 469 n. 21, 703 N.W.2d 23 (2005). If an agreement is unambiguous, its provisions are a matter of law for the court. *See Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375, 666 N.W.2d 251 (2003) ("[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law.").

*See also I-75 Partners, LLC v. Stefanutti*, No. 310324, 2014 WL 702332, at *4 (Mich. Ct. App.

Feb. 20, 2014) (citation omitted) ("Thus, whether the [assignment] documents transfer ownership or are instead intended to serve merely as security for an obligation can be determined by looking to the language of the [assignments].").

Applying Michigan law, the Court concludes from the language of the September 15, 2023 Assignment that it unambiguously transferred the Debtor's ownership of its contractual right to payment of any proceeds under its Purchase Agreement with BOD. It was a transfer of ownership, not the granting of a security interest.

In his Second Reply Brief, the Trustee also argues, for the first time, that Article 9 of the Uniform Commercial Code applied to the September 15, 2023 Assignment, and that RAD and Premier did not perfect their security interest by filing a UCC-1 financing statement.[14] It is not clear whether the Trustee is arguing that a UCC financing statement was required even if the assignment was a transfer of ownership, or just that a financing statement was required because the assignment was a mere security interest. In any event, there are at least three problems with the Trustee's argument.

First, the Trustee's argument that UCC Article 9 applies to the assignment in this case is not well-developed, and may be wrong. *See, e.g.*, Mich. Comp. Laws § 440.9109(4)(g).[15]

Second, the Trustee cites no Michigan authority holding that an assignment that is a transfer of ownership, rather than a security interest, must be perfected by filing a financing statement.

---

[14] *See* Second Reply Brief at 7.

[15] That section states that Article 9 does not apply to "[a]n assignment of a single account, payment intangible, or promissory note to an assignee in full or partial satisfaction of a preexisting indebtedness."

12

Third, and most importantly, even if a UCC financing statement was required to perfect such a transfer of ownership, that would only mean that the transfer of ownership made by the September 15, 2023 Assignment was not perfected under the UCC. Even if that is so, the transfer of ownership was still effective, as between the parties to the assignment. A lack of perfection, if perfection was required, might give the Trustee a chance to seek avoidance of the transfer, for example, under 11 U.S.C. § 547(b), as a pre-petition preference. But it would not change the fact that as of the bankruptcy petition date, the Debtor no longer owned any contractual right to payment of the Parcel B sale proceeds. *See, e.g.*, Mich. Comp. Laws § 440.9318(1) ("A debtor that has sold an account, chattel paper, payment intangibles, or promissory note does not retain a legal or equitable interest in the [item(s)] sold."). This defeats the Trustee's effort to avoid the transfer as a post-petition transfer of property of the bankruptcy estate under 11 U.S.C. § 549(a).

## IV. Civil Rule 56(g) findings and conclusion

For the reasons stated above, and under Fed. R. Civ. P. 56(g), the Court concludes that there is no genuine issue of material fact regarding the following, and the following facts and conclusions are deemed established in this adversary proceeding:

A. The September 15, 2023 Assignment was a valid, effective assignment under Michigan law, by the Debtor to RAD and Premier, of the ownership of all of the Debtor's contractual right to receive from BOD any of the $700,000.00 purchase price for the Debtor's sale of Parcel B, under the Purchase Agreement with BOD.

B. As a result, beginning well before the Debtor filed its bankruptcy petition on September 22, 2023, the Debtor no longer owned any right to receive sale proceeds from

its sale of Parcel B.

C.  It follows that while the $209,646.56 Transfer was a post-petition transfer, it was not in any part a transfer of property of the bankruptcy estate.  The Transfer therefore is not avoidable under 11 U.S.C. § 549(a)(1), and Count II of the Trustee's Complaint fails.

For the reasons stated above, the Trustee's Motion must be denied.  And the Defendant RAD, rather than the Trustee, is entitled to summary judgment on Count II of the Trustee's Complaint.

## V.  Order

For the reasons stated above,

IT IS ORDERED that:

1. The Trustee's Motion (Docket # 18) is denied.

2.  Under Fed. R. Civ. P. 56(f)(1), summary judgment is granted in favor of Defendant RAD and against the Trustee on Count II of the Trustee's Complaint, and Count II is dismissed with prejudice.

**Signed on September 25, 2025**    /s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**